UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
UNITED STATES OF AMERICA,

       -against-                          ORDER
                                                95-CR-0825(JS)

BING GONG YONG,

                  Defendant.
-------------------------------------X
APPEARANCES

For Defendant:     Bing Gong Yong, Pro Se
                  Reg. No. 14002-086
                  U.S.P. Victorville
                  U.S. Penitentiary
                  P.O. Box 3900
                  Adelanto, California  92301

For United States: Michael R. Maffei, Esq.
                  United States Attorney's Office
                  Eastern District of New York
                  610 Federal Plaza
                  Central Islip, New York  11722

SEYBERT, District Judge:

        Currently before the Court is the pro se motion of Defendant Bing Gong Yong ("Defendant" or "Yong") seeking compassionate release in the form of a sentence reduction (hereafter, the "Motion").  (See Motion, ECF No. 226; see also Reply, ECF No. 229.)  The Government opposes the Motion.  (See Opp'n, ECF No. 227.)  For the following reasons, the Motion is **DENIED.**


        [Remainder of page intentionally left blank.]

RELEVANT BACKGROUND

I.   Defendant's Underlying Convictions

The Court assumes the parties' familiarity with Defendant's convictions. (See also, e.g., Opp'n at 1-3 (providing a comprehensive summary of Defendant's convictions).) By way of general background and for the reader's convenience, the Court provides the following summary. In 1984, Defendant was convicted of kidnapping, extortion, conspiracy to kidnap, and receipt of ransom in the Northern District of New York (hereafter, the "NDNY Conviction"). He was sentenced to life in prison (hereafter, the "NDNY Sentence"). Defendant would be eligible for parole after serving 10 years of his NDNY Sentence.

While incarcerated for his NDNY Conviction, between 1990 and 1995, Defendant participated in and held a leadership role in a conspiracy to distribute heroin (hereafter, the "Prison-Based Heroin Conspiracy"). In 1996, in the Eastern District of New York, Defendant pled guilty to the Prison-Based Heroin Conspiracy (hereafter, the "EDNY Conviction") and was sentenced to 324 months of imprisonment to run consecutively to his NDNY Sentence (hereafter, the "EDNY Sentence"). (See Case Docket, Judgment (ECF No. 160); Amended Judgment (ECF No. 161).) At the time of his sentencing, the applicable Guidelines range for the EDNY Conviction was 324 to 405 months based upon the determination of a Total Offense Level of 39 and a Criminal History Category III.

II.  <u>Prior Relevant Litigations and Motions</u>

In April 2014, the U.S. Parole Commission denied Yong's petition for parole on his NDNY Conviction.  Thereafter, he filed suit challenging that denial; said suit was deemed a Section 2241 habeas petition.  Ruling on the Section 2241 petition, the court determined Defendant was deemed to have waived his parole consideration.  <u>See</u> <u>Gong v. United States</u>, No. 14-CV-2970, 2017 WL 490424, at 1 n.2 (N.D. Ga. Feb. 7, 2017) ("BOP regulations provide that failure to apply for or waive parole consideration is deemed a waiver of that consideration.  Petitioner does not allege that he applied for parole consideration in 1994." (citing 28 C.F.R. § 2.11(c))), <u>report and recommendation adopted</u>, 2016 WL 8710419 (N.D. Ga. June 3, 2016) (in denying Yong's Section 2241 petition, adopting recommendation "that Petitioner's total effective sentence need not be recalculated, because Petitioner fails to make any legitimate argument as to why he presently needs a specific release date when he is serving a life sentence, has been denied parole on that sentence, and has a consecutive 324-month sentence yet to serve"; further stating "it is beyond dispute that Petitioner . . . waived his parole consideration").

While his Section 2241 petition was pending, in 2015 and in this Court, Defendant moved to have his EDNY Sentence reduced pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 of the U.S. Sentencing Guidelines (hereafter, the "First C.R. Motion").  (See

ECF No. 213.)  Before ruling upon the First C.R. Motion, the Court[1]
directed the U.S. Probation Department ("Probation") to file an
addendum to Defendant's Presentencing Report addressing: "the
amended guideline range; the [D]efendant's institutional
adjustment while in custody; the [D]efendant's release date, if
available; and whether the [BOP] has any detainers lodged against
the [D]efendant."  (Order to Show Cause, ECF No. 214, ¶ 1.)
Probation subsequently reported Defendant: was eligible for an
Amendment 782 sentence reduction on his EDNY Sentence, with the
resulting amended sentencing range being 262 to 327 months'
imprisonment; had 42 disciplinary sanctions based primarily upon
infractions for possession and/or use of drugs and/or alcohol;
and, was subject to an Immigration and Customs Enforcement
detainer.  (See Addendum, ECF No. 216 (sealed).)  Ultimately, the
Court[2] denied Defendant's First C.R. Motion.  (See Jan. 22, 2019
Order (the "First C.R. Order"), ECF No. 218.)  Notwithstanding
finding Defendant was eligible for an Amendment 782 sentence

---

[1]  At that time, this case was before Honorable Sandra J.
Feuerstein; it was subsequently assigned to the undersigned on
August 20, 2021.  (See Aug. 20, 2021 Elec. Reassignment Order.)

[2]  Judge Feuerstein issued the Order ruling on the First C.R.
Motion.

reduction, the Court also determined the EDNY Sentence "remain[ed] appropriate."[3]  (Id. at 7.)  The Court's decision was based upon:

> consideration of (i) the applicable factors under 18 U.S.C. § 3553(a); (ii) the nature and seriousness of the danger posed by a reduction in [D]efendant's term of imprisonment in light of, inter alia, his criminal history; and (iii) [D]efendant's apparent disdain for, and inability to comply with, the law, as reflected by his criminal history and disciplinary history while incarcerated.

(Id. at 8.)  Defendant sought to appeal the District Court's denial decision, which the Government opposed and which the Second Circuit denied because it "lack[ed] an arguable basis either in law or in fact."  United States v. Bing Gong Yong, No. 19-403, Mandate (2d Cir. Oct. 16, 2019) (available in Case Docket at ECF No. 220).

III. Defendant's Current Pending Motions

Before the Court is Defendant's most recent compassionate release motion (previously defined as the "Motion"), as well as a motion to amend the Motion (hereafter, the "Amend Motion") (see ECF No. 235), and a motion for appointment of counsel (hereafter, the "Appointment Motion") (see ECF No. 243).  A brief outline of each Motion follows.

Defendant puts forth his current Motion arguing: his hypertension exposes him to greater risks if he contracts COVID-19 (see Motion at 3); notwithstanding his drug-related disciplinary

---

[3]  Of note: Defendant's sentence of 324 months' imprisonment fell within the adjusted Guidelines range.

infractions, which are not violent in nature, he is not a danger to the community (see id. at 10); and, the Section 3553(a) Factors weigh in favor of Defendant (see id. at 11-12).  More specifically as to the Section 3553(a) Factors, Defendant asserts: "[t]he BOP's harsh COVID-19 containment measures . . . change the punishment analysis"; since he is to be expelled from the United States, his continued incarceration "is unlikely to advance [his] effective rehabilitation"; and, granting the Motion addresses the need to avoid unwarranted sentence disparities among defendants with similar records and who are found guilty of similar conduct (see id.).  According to Defendant, "[g]iven the harsh consequences of deportation, and his 38 years [of] time-served so far, [granting] compassionate release would be 'sufficient . . . to afford adequate deterrence to criminal conduct.'"  (Id. (quoting 18 U.S.C. § 3553(a)).)

In his Amend Motion, Defendant does not address the amendment standard; rather, he expounds upon his arguments in favor of granting the Motion.  (See Amend Motion, in toto.)  First, he reiterates his hypertension presents an extraordinary and compelling reason to grant compassionate release.  (See id. at ECF p.11 (incorporating medical condition argument from Motion).)  Second, Defendant advances the harsh conditions endured during COVID-19, which "made his incarceration harsher and more punitive than would otherwise have been the case," as a reason for ending

his incarceration. (Id. at ECF p.11; see also id. at ECF pp.12-13.) Third, Defendant argues his parole from his NDNY Sentence was delayed by nine years (and causing Defendant to be incarcerated an additional nine years) due to improper application of BOP policies and Parole Board regulations; therefore, this situation justifies reducing his current EDNY Sentence. (See Amend Motion at ECF pp.8-9, 13-15.)

Alternatively, conceding "this Court has considered this relief before and denied that relief," Defendant again seeks a reduction pursuant to Amendment 782. (Id.) He contends he now "has an exemplary prison record for well over 5 years" and "has maintained and taken[] steps to rehabilitate," thereby assuaging the Court's prior "emphasis on Defendant[']s prison conduct," which was a basis for denying his First C.R. Motion. (Id.)

As to the Section 3553(a) Factors, Defendant argues his almost 40 years of incarceration, even if the result of improper calculations, satisfies those Factors. (See id. at ECF p.16.) Defendant further maintains he is a changed man from the young man first incarcerated almost 40 years ago, as evidenced by his more than five years of compliant conduct in prison. (See id. at ECF p.17.) Relatedly, Defendant has been categorized as "a Low Risk for recidivism by the BOP." (Id.) Additionally, since he will be deported, to which he does not object, "Defendant is unlikely to pose a danger to the Community after release." (Id.) Finally, by

granting a sentence reduction, the Court will avoid disparity with two of Defendant's co-defendants, Yong Bing Nam and CE Quah Choan-Phong, who were both sentenced to life, but who have long since been paroled. (See id. at ECF p.18.)

Defendant has also recently filed a letter motion requesting assignment of counsel to assist him with his Motion. (See ECF No. 243 (stating, inter alia, "I need assistance for my compassion release case").)

The Government opposes the Motion arguing Yong cannot show extraordinary and compelling reasons for compassionate release and the Section 3553(a) Factors weigh against granting such relief. (Opp'n at 1.) More specifically, it contends Defendant's assertion "that the existence of the COVID-19 pandemic generally, his medical condition, i.e.[,] hypertension, his rehabilitation while incarcerated[,] and the fact that he will be deported from the United States upon release from custody constitute extraordinary and compelling reasons to grant compassionate release . . . do not justify such relief, particularly in light of the relevant Section 3553(a) [F]actors." (Id. at 4-5.) As to the Section 3553(a) Factors, the Government maintains Yong's "prior motions for relief on his sentence have been rejected in light of the very [Section] 3553(a) [F]actors this Court must consider in evaluating the [M]otion" and remains a basis for denying the instant Motion. (Id. at 6.)

The Government was neither directed to nor filed responses to the Amend Motion or Appoint Motion. (<u>See</u> Case Docket, <u>in toto</u>.)

Defendant is currently serving his sentence at the high security penitentiary in Victorville, California (hereafter, "USP Victorville"); he has an anticipated release date of November 21, 2045. Fed. Bureau of Prisons ("BOP"): Find an Inmate, Bing Gong Yong (BOP Reg. No. 14002-086) (hereafter, the "Yong Locator Information") (identifying Defendant's location as "Victorville USP"), https://www.bop.gov/inmateloc/ (last visited July 25, 2024).

<u>DISCUSSION</u>

I.   <u>Applicable Law</u>

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." <u>United States v. Rabuffo</u>, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting <u>United States v. Gotti</u>, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request <u>by the warden of the defendant's facility</u>, whichever

is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020). "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)). "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a motion for compassionate release]." United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)); see also United States v. Torres, No. 16-CR-0500, 2022 WL 538323, at *2 (S.D.N.Y. Feb. 23, 2022) ("Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies." (quoting United States v. Williams-Bethea, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020)). And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72-73).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the First Step Act, courts are not restricted to the Sentencing Commission's applicable policy statements, but may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020); see also Keitt, 21 F.4th at 71 ("A court deciding a compassionate release motion can consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it].'" (alteration in original) (quoting Brooker, 976 F.3d at 237)). Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Brooker, 976 F.3d at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also Ambrosio, 541 F. Supp. 3d at 254 (same). "Additionally, district courts may consider 'intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.'" United States v. Monteleone, No. 92-CR-0351, 2023 WL 2857559, at *2 (E.D.N.Y. Apr. 10, 2023) (quoting Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the

extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); see also United States v. Jones, No. 22-2008-cr, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same).  "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).

II.  Application

   A.  Exhaustion

      Defendant claims he exhausted the applicable administrative remedy by making a May 14, 2021 "request to the Warden at F.C.I. Edgefield",[4] which was "forwarded to the

---

[4]  At the time Defendant filed his Motion, he was housed in F.C.I. Edgefield, a medium security federal correctional institution located in Edgefield, South Carolina.  Therefore, Defendant was

Compassionate Release Coordinator/RIS for review." (Motion at ECF p.2.) He sent a subsequent compassionate release request on December 26, 2021, but was informed by the Warden that said process must be initiated by his case manager. (See id.; see also Jan. 29, 2021 email from Warden, ECF No. 226 at p.5, attached to Motion.) In any event, Defendant asserts neither request was addressed within the requisite 30-day period afforded the Warden. (See id.)

The Government does not strenuously dispute Defendant's exhaustion representations. (See Opp'n at 4 ("Assuming arguendo that the [D]efendant's [M]otion is not procedurally barred for failure to exhaust his administrative remedies . . . ."); see also id. n.1.) Indeed, other than the bald, general contention that, "[b]ased on the record before the Court, it does not appear that the [D]efendant has met the statutory exhaustion requirements" (id. at note 1), the Government's contention is not supported by any persuasive evidence. Cf., e.g., United States v. Diaz, No. 10-CR-0277, 2024 WL 3228347, at *2 (E.D.N.Y. June 27, 2024) (finding, where Government discussed defendant's exhaustion of administrative remedies "only to acknowledge that it is not clear from the defendant's application whether he has exhausted" said remedies, and "d[id] not expressly raise an exhaustion defense,"

---

required to present his request to the Warden of that facility. See 18 U.S.C. § 3582(c)(1)(A)(i).

but "direct[ed] its opposition entirely at whether [defendant] states extraordinary and compelling reasons and whether § 3553(a) factors militate against his early release," the court was free to consider the merits of defendant's compassionate release motion (omitting internal quotations marks and citations)); United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, *3 (E.D.N.Y. May 23, 2024) ("[B]ecause the Government has not raised an exhaustion defense, the Court finds that it has forfeited any such defense and the Court is 'free to consider the merits' of [defendant's compassionate release] motion" (quoting United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021); collecting cases). Weighing the Government's argument against Defendant's submission of the Warden's December 29, 2021 email and claim that "more than 30 days has lapsed since" sending his requests to the Warden (Motion at ECF p.2), the Court finds Defendant has satisfied his burden of establishing administrative exhaustion. It, therefore, proceeds to examine Defendant's claim of extraordinary circumstances warranting compassionate release.

    B.    <u>Defendant has Failed to Establish the Existence of Extraordinary and Compelling Circumstances</u>

As preliminary matters: The Court denies Defendant's Appoint Motion. "[A] defendant has no right to the assistance of counsel in filing a motion for compassionate release . . . ." <u>United States v. Fleming</u>, 5 F.4th 189, 193 (2d Cir. 2021); <u>see</u>

also United States v. Manso-Zamora, 991 F.3d 694, 696 (6th Cir. 2021) ("[E]very federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings."); United States v. Romano, No. 22-CR-0012, -- F. Supp. 3d --, 2023 WL 8735203, *1 n.1 (E.D.N.Y. Sec. 19, 2023) (in court's discretion, denying defendant's request for appointment of counsel to assist in pursuing motion for compassionate release). In any event, Defendant's submissions show he is well-able to present his arguments in support of his Motion, which is fully briefed, and he does not require assistance in advancing said Motion.

Relatedly, in its discretion, the Court deems Defendant's Amend Motion as a supplemental brief expanding upon Defendant's arguments in support of his Motion. Therefore, the Amend Motion is granted to the extent the Court will consider it in conjunction with Defendant's Motion. See, e.g., generally Dietz v. Bouldin, 579 U.S. 40, 45 (2016) (reiterating courts have "inherent powers" "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").

Defendant is currently 63-years-old. See Yong Locator Information. He asks the Court to consider the following: Defendant's health, i.e., that he suffers from hypertension, which could elevate COVID-related risks; the purported sentencing disparity between Defendant and his co-defendants; the current,

harsher-than-anticipated conditions in prison due to the COVID-19 Pandemic; the alleged delayed parole of his NDNY Sentence as the result of the BOP's and Parole Board's claimed improper consideration of his EDNY Sentence; and, alternatively, his eligibility for an Amendment 782 reduction, together with his rehabilitation efforts in being discipline-free for more than five years.

As to Defendant's Hypertension, in conjunction with Consideration of COVID-19: "Since the decline of COVID-19 cases and proliferation of vaccines, courts in this Circuit have generally rejected compassionate release motions based on the threat posed by the virus, asserting that 'the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors.'" United States v. Johnson, 671 F. Supp. 3d 265, 280 (E.D.N.Y., 2023) (quoting United States v. Oquendo, No. 13-CR-0357, 2023 WL 199609, at *4 (S.D.N.Y. Jan. 17, 2023)). "In evaluating whether an individual's current risk from the pandemic warrants compassionate release, courts have examined their vaccine status, the COVID-19 situation at their specific correctional facility, and whether their co-morbidities are being managed." Id. (citations omitted). Further, as to COVID-19 variants, such variants are "considered less severe in causing illness and death." Mayes v. United States, No. 12-CR-0385, 2023 WL 22632, at *4 (E.D.N.Y. Jan. 3, 2023).

First, Defendant has received the COVID-19 vaccination. (See Opp'n (citing Ex. A, at GONG 000099).)

Second, in considering the COVID-19 situation at USP Victorville, one must recognize that the COVID-19 Public Health Emergency ended on May 11, 2023. See U.S. Dep't Health & Human Servs., Fact Sheet: End of the COVID-19 Public Health Emergency, available at https://hhs.gov/about/news/2023/05/09/fact-sheet-end-of-the-covid-19-public-health-emergency.html (last visited July 29, 2024). Therefore, it is no longer necessary for the BOP to engage in across-the-board special operations; indeed, UPS Victorville is no longer reporting a COVID-19 Operational Level. See BOP USP Victorville Home Page, available at https://www.bop.gov/locations/institutions/vip/ (last visited July 29, 2024); compare BOP, Statistics: Inmate COVID-19 Data (reporting one currently open COVID-19 case for all three Victorville facilities), available at https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited July 29, 2024). Hence, the Court presumes the BOP has returned to operating USP Victorville without COVID-19-related precautions, rendering this consideration of little weight. See, e.g., Jones, 17 F.4th at 375 (confinement in facility "where [COVID-19] counts are currently low" was not "extraordinary and compelling" circumstance).

Third, in considering Defendant's health condition, i.e., hypertension, and its management, the Court notes Defendant has not provided any medical records substantiating the condition he asserts he suffers; yet, it is his burden to prove compassionate release is warranted. Indeed, notwithstanding his protestations to the contrary (see, e.g., Reply at 2), Defendant has failed to show that his hypertension "so incapacitate him as to warrant a reduction of his sentence." United States v. Lisi, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("BOP's guidance, read in conjunction with the Application Notes to § 1B1.13 [of the U.S. Sentencing Guidelines], indicate that a defendant's medical condition must be one of substantial severity and irremediability, and [defendant] has not shown that he suffers from such conditions."). Thus, in the absence of records demonstrating his suffering from hypertension to such a degree that he is unable to self-care, Defendant cannot sustain his burden warranting compassionate release. See, e.g., United States v. Brown, No. 12-CR-0120, 2024 WL 1639926, at *3 (E.D.N.Y. Apr. 16, 2024) (finding, where defendant provided vague allegations regarding his medical conditions--hypertension, high cholesterol, prevalence of respiratory illness, and other unspecified health conditions--and did not substantiate his claims of inadequate medical care, defendant failed to show his medical conditions constituted extraordinary and compelling reasons warranting a sentence

reduction); see also United States v. Lake, No. 14-CR-0264, 2023 WL 8810620, at *4 (E.D.N.Y. Dec. 20, 2023) ("[C]ourts have found that high blood pressure is not an extraordinary and compelling reason for an inmate's release." (quoting United States v. Jones, No. 02-CR-0778, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) (collecting cases)).   In any event, even assuming, arguedo, Defendant seriously suffers from hypertension, "courts in recent months have deemed similar health problems insufficient for compassionate release, at least in part because defendants have 'worked successfully with BOP medical professionals to address [them].'" Johnson, 671 F. Supp. 3d at 280 (finding, even in light of COVID-19 Pandemic, defendant's co-morbidities, did not constitute extraordinary and compelling reasons for release) (quoting United States v. Oquendo, No. 13-CR-0357, 2023 WL 199609, at *4 (S.D.N.Y. Jan. 17, 2023)); see also Oquendo, 2023 WL 199609, at *4 ("This Court continues to align itself with those courts that have found 'that the risks posed by the [P]andemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease.'" (quoting United States v. Nwankwo, No. 12-CR-0031, 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases))).   Upon the record

presented, there is no reason for the Court to conclude Defendant's hypertension is not being properly addressed by the BOP.

As to the Alleged Sentencing Disparity: "The court, in determining the particular sentence to impose, shall consider," among other things, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(2)(6) (emphases added). Of significance, "[h]owever, a court is not required to consider disparities between co-defendants." Johnson, 671 F. Supp. 3d at 283 (citing United States v. Frias, 521 F.3d 229, 236 (2d Cir. 2008); United States v. Medina, 607 F. App'x 60, 61 (2d Cir. 2015) (summary order)).

Here, Defendant points to co-defendants Yong Bing Nam and CE Quah Choan-Phong (hereafter, the "Co-Defendants") as comparators. According to Defendant, the Co-Defendants were also sentenced to life sentences for their respective kidnapping convictions pursuant to the same indictment, but have been paroled years ago. However, there is no indication the Co-Defendants were also subsequently sentenced in this Court for participating in the Prison-Based Heroin Conspiracy, like Defendant. Relatedly, Defendant does not offer the Court any insight into the factors that led to the Co-Defendants' respective sentences. Yet, as the one seeking a sentence reduction, it is Defendant's burden to do so. See generally Lake, 2023 WL 8810620, at *3. Thus, the absence

of such information stymies the Court's ability to assess whether there is any unwarranted disparity in Defendant's sentence.    In sum, Defendant fails to establish this is an extraordinary or compelling reason to reduce his sentence.    This is especially true since a court need not "consider disparities between co-defendants."  Johnson, 671 F. Supp. 3d at 283.

As to Harshness of Incarceration Caused by the Pandemic: "Undoubtedly, 'a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.'"  Johnson, 671 F. Supp. 3d at 281 (quoting United States v. Mcrae, No. 17-CR-0643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021)).  Consequently, "particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic," courts have been willing to conclude that "pandemic-induced conditions of confinement can constitute extraordinary and compelling circumstances warranting compassionate release."  Id. (quoting Oquendo, 2023 WL 199609, at *5, and collecting cases) (emphasis added); see also United States v. Russo, 643 F. Supp. 3d 325, 333 (E.D.N.Y. 2022) ("In addition to the health risks posed by the pandemic, the restrictions at [federal correctional facilities] during the pandemic have made [defendants'] incarceration[s] much more punitive than originally

contemplated at the time of sentencing[s]." (citing United States v. Rodriquez, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)).

Yet, to the extent Defendant claims the Pandemic has made his incarceration more punitive than anticipated, "these hardships do not set [him] apart from the rest of the BOP inmate population and therefore do not, alone, constitute extraordinary and compelling reasons for his release.'" United States v. Johnson, No. 98-CR-0860, 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31, 2021)); see also, e.g., United States v. Veliu, No. 17-CR-0404, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022) ("[T]he conditions of confinement during the pandemic [do not] give rise to extraordinary and compelling circumstances. Although the Court acknowledges that 'the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure. While the Court does not minimize those difficulties, they do not rise to the level of extraordinary and compelling.'") (quoting United States v. Johnson, No. 18-CR-0907, 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021)); United States v. Pinto-Thomaz, 454 F. Supp. 3d 327, 329 (S.D.N.Y., 2020) (observing "it is hard to see how" the BOP's implementation of various protocols in attempting to contain the spread of COVID-19 "ma[d]e the situations of [defendants] 'extraordinary' in terms of the statutory requirement, for in these respects [the defendants] are no different from a host of other prisoners"). Standing alone, the

harshness of conditions Defendant faced during the Pandemic were the same as those endured by his fellow inmates; in that sense, they were not extraordinary. See, e.g., United States v. Martinez, No.03-CR-1049, 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022) ("[G]eneralized COVID-19 concerns are not regarded as extraordinary and compelling reasons for compassionate release." (citations omitted)). Nor, given the record, is this a case where, considering several circumstances in totality, the harshness factor should weigh in favor of finding an extraordinary and compelling reason for granting compassionate release. Compare United States v. Amerson, No. 05-CR-0301, 2023 WL 4497767, at *6 (E.D.N.Y. July 12, 2023) (finding where, among other considered circumstances, defendant had served more than 18 years of a 32-year sentence, and suffered serious health conditions, including type II diabetes which was worsening and proving difficult for defendant to manage with necessary self-care, "the harshness of COVID-related restrictions weigh[ed] in favor of a sentence reduction even if they d[id] not independently constitute an extraordinary and compelling reason to grant compassionate release" (emphasis added)).

        As to Defendant's Claim of Delayed Parole: Defendant also asserts his Motion should be granted because of the delayed granting of parole on his NDNY Conviction, which—according to Defendant—caused him to serve nine additional years of

incarceration.   In essence, by seeking a reduction of his EDNY Sentence, Defendant would have the Court grant him a credit from the alleged extra time he spent incarcerated on his NDNY Conviction.   However, such a request is properly made pursuant to 28 U.S.C. § 2241.

Under 28 U.S.C. § 2241, a petitioner can challenge the execution of his sentence, including the computation of that sentence by prison officials.   See Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) (stating a Section 2241 habeas petition "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction").   Thus, pursuant to Section 2241, an inmate may challenge such matters as the computation of his sentence by prison officials.   See Poindexter v. Nash, 333 F.3d 372, 377 (2d Cir. 2003) ("Under § 2241, a prisoner may challenge the . . . calculations by the Bureau of Prisons of the credit to be given for other periods of detention." (citations and internal quotation marks omitted)); see also Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001); Zenquis v. Pullen, No. 3:22-CV-1151, 2023 WL 2931585, at *1 (D. Conn. Apr. 13, 2023); Bracamonte v. Von Blanckensee, No. 18-CV-0166, 2019 WL 1368084, at *1 (S.D.N.Y. Mar. 26, 2019).   Further, a Section 2241 habeas petition must be brought in the district where the petitioner is imprisoned. See Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004).

Defendant has already brought a Section 2241 habeas petition seeking review of his denial of parole. See Yong Bing Gong v. United States, No. 1:14-CV-2970, 2016 WL 8710419 (N.D. Ga. June 30, 2016), report and recommendation adopted, 2017 WL 490424 (N.D. Ga. Feb. 6, 2017) ("In his Section 2241 Petition, Petitioner appears to seek recalculation of his total effective sentence and review of his denial of parole."). Of significance here, the habeas court stated:

> Petitioner was arrested in Tokyo, Japan, in 1984, subsequently convicted of kidnapping charges in the United States District Court for the Northern District of New York, and sentenced to life imprisonment. Although Petitioner was eligible for parole consideration after serving ten years, he waived that consideration in 1994.
>
> In 1996, while serving a life sentence for kidnapping and conspiracy to kidnap, [i.e., the NDNY Sentence,] Petitioner was convicted of conspiracy to distribute and possession with intent to distribute heroin in the United States District Court for the Eastern District of New York and sentenced to a consecutive term of 324 months imprisonment[, i.e., the EDNY Sentence]. On April 23, 2014, the United States Parole Commission denied Petitioner's parole on his kidnapping convictions on the ground that he was likely to engage in criminal conduct, as shown by his 1996 drug convictions and "thirty (30) disciplinary infractions for drug related conduct during [his] confinement." The National Appeals Board affirmed the denial of Petitioner's parole on August 1, 2014.
>
> [BOP personnel] explains that BOP policy forbids the aggregation of a sentence imposed for offenses that occurred before November 1, 1987, with a sentence imposed for offenses that occurred after that date. Accordingly,

Petitioner's life sentence for kidnapping[, i.e., the NDNY Sentence,] has not been aggregated with his consecutive 324-month sentence for drug offenses[, i.e., the EDNY Sentence]. [BOP personnel] states that if the Parole Commission grants parole on Petitioner's life sentence, the BOP will then calculate his release date based upon his consecutive 324-month sentence.

On June 3, 2016, the Magistrate Judge issued his R&R. The Magistrate Judge found that Petitioner's total effective sentence need not be recalculated, because Petitioner fails to make any legitimate argument as to why he presently needs a specific release date when he is serving a life sentence, has been denied parole on that sentence, and has a consecutive 324-month sentence yet to serve. The Magistrate Judge further found that Petitioner is not entitled to parole, because (1) he fails to show that his petition is timely under the one-year statute of limitations in 28 U.S.C. § 2244(d)(1), and (2) Petitioner fails to make any legitimate argument as to why his 2014 parole application was improperly denied.

Gong, 2017 WL 490424, at *1 (internal citations and footnote omitted; emphases added). Of further importance in this instance is the habeas court's note that "BOP regulations provide that failure to apply for or waive parole consideration is deemed a waiver of that consideration. Petitioner does not allege that he applied for parole consideration in 1994." Id. at n.1 (citing 28 C.F.R. § 2.11(c)). Defendant did not appeal the habeas court's February 2017 decision.

Assuming arguendo Defendant did serve an additional nine years which were not required, it is clear from the habeas court's

ruling that the fault lies with Defendant in failing to timely seek parole consideration. See Gong, 2017 WL 490424, at *2 ("Petitioner does not allege that he applied for parole consideration in 1994, and it is beyond dispute that Petitioner thus waived his parole consideration."). Without more, this Court declines to interpret such a failure as either an extraordinary or compelling reason warranting compassionate release. Moreover, given he continues pressing his delayed-parole argument, it is apparent Defendant simply disagrees with the applicable BOP policies precluding the aggregation or consolidation of Defendant's NDNY Sentence with his EDNY Sentence. (Compare, e.g., Amend Motion at 13 ("[W]hat is extraordinary and compelling is[] the fact that the BOP declined to aggregate the sentences under a policy implemented in 1999.")), with Gong, 2017 WL 490424, at *1 ("[BOP personnel] explains that BOP policy forbids the aggregation of a sentence imposed for offenses that occurred before November 1, 1987, with a sentence imposed for offenses that occurred after that date. Accordingly, Petitioner's life sentence for kidnapping has not been aggregated with his consecutive 324-month sentence for drug offenses." (emphasis added)).[5]   It is neither extraordinary nor compelling for a defendant to disagree with a

---

[5]   To the extent Yong's delayed-parole argument can also be construed to imply an ineffective assistance of counsel argument (see Amend Motion at 13-14), such a claim is more properly heard via a habeas petition.

court's ruling.    And, the proper avenue to pursue such dissatisfaction is by appealing the decision of the ruling court, not seeking a sentence reduction from another one.    Indeed, Defendant's failure to appeal the habeas court's denial of his Section 2241 petition based upon his contention that the BOP and Parole Board failed to aggregate his NDNY and EDNY Sentences finds no footing even in the catch-all provision of the U.S. Sentencing Commission's applicable policy statement, U.S.S.G. § 1B1.13(b), which "allows the court to consider other unenumerated circumstances that may constitute 'extraordinary and compelling reasons'."    Brown, 2024 WL 1639926, at *2 (citing U.S.S.G. § 1B1.13(b)(5) ("Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) and (4).")).    Defendant's disagreement with the habeas court's ruling on his Section 2241 petition does not come close to the gravity of those circumstances described in paragraphs (1) through (4).[6]  In sum, the Court finds Defendant's parole-delay

---

[6]  Paragraph (1) addresses medical circumstances of a defendant; paragraph (2) addresses the age of a defendant; paragraph (3) addresses family circumstances of a defendant; and, paragraph (4) discusses a defendant being a victim of abuse while incarcerated. See U.S.S.G. §§ 1B1.13(b)(1)-(4).

argument unpersuasive in establishing an extraordinary and compelling reason warranting a sentence reduction.

Alternatively, as to Amendment 782 Eligibility:

Judge Feuerstein already determined Defendant is eligible for a sentence reduction pursuant to Amendment 782. (See First C.R. Order at 6-7.) This Court need not revisit that determination. What Defendant seeks now is, in essence, a reconsideration of the Court's "emphasis on Defendant[']s prison conduct." (Amend Motion at ECF p.15. (arguing further "the circumstances the Court relied heavily on to deny relief previously[] have changed dramatically" and "Defendant has changed, matured and should be considered for a [r]eduction of sentence").) This is little more than an argument premised upon rehabilitation. It is well-settled, however, that "rehabilitation alone shall not be considered an extraordinary and compelling reason." Brooker, 976 F.3d at 237-38 (citing 28 U.S.C. § 944(t)); United States v. Wagner, No. 17-CR-0106, at *7 (E.D.N.Y. May 31, 2024) (same (quoting Brooker)). Moreover, in addition to considering his prison misconduct (see First C.R. Order at 8), Judge Feuerstein also considered, inter alia, "the applicable factors under 18 U.S.C. § 3553(a)" and found "a reduction of defendant's sentence . . . not warranted under the circumstances of this case, particularly since [D]efendant's sentence falls within the amended Guidelines range." (Id.) Other than generally

claimed rehabilitation, which is not sufficient to support a sentence reduction, Defendant has not proffered anything to persuade the Court that a different outcome is required now. Cf., e.g., Vasquez, 2024 WL 2385264, at *5 (E.D.N.Y., 2024) ("What constitutes rehabilitation is left to the Court's discretion, but courts in this district have considered the following factors: the defendant's 'maintenance of familial and societal relationships; letters of support both from community members and prison staff; conduct and disciplinary records while incarcerated; . . . any achievements and education obtained while incarcerated; . . . gains in maturity[;] and other clear signs that a defendant's incarceration has had rehabilitative value'." (quoting United States v. Byam, No. 12-CR-0586, 2024 WL 1556741, at *8 (E.D.N.Y. Apr. 10, 2024)) (emphasis added).

***

In sum, even considering in combination all the circumstances presented by Defendant, their totality does not rise to the level of extraordinary and compelling. Hence, Defendant has not met his burden of showing entitlement to compassionate release. See Jones, 17 F.4th at 374 ("Thus, extraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A).").

C.   <u>The Section 3553(a) Factors</u>[7]

"The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." <u>Gotti</u>, 433 F. Supp. 3d at 615; <u>see also</u> <u>Jones</u>, 2023 WL 8613867, at *2 ("[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'"); <u>Jones</u>, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actos' is 'an alternative and independent basis for denial of compassionate release.'" (quoting <u>United States v. Robinson</u>, 848 F. App'x 477, 478 (2d Cir. 2021)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the

---

[7]   "Many of the applicable [Section] 3553(a) factors are incorporated in the Court's discussion of extraordinary and compelling circumstances." <u>Vasquez</u>, 2024 WL 2385264, at *6 (quoting <u>United States v. Campbell</u>, 647 F. Supp. 3d 76, 89 (E.D.N.Y. 2022)).

> law, and to provide just punishment for the
> offense;" "to afford adequate deterrence to
> criminal conduct;" "to protect the public from
> further crimes of the defendant;" and "to
> provide the defendant with needed educational
> or vocational training, medical care, or other
> correctional treatment in the most effective
> manner." 18 U.S.C. § 3553(a)(1)-(2).

Johnson, 671 F. Supp. 3d at 283.

Acknowledging that he does not have an exemplary prison record, Defendant contends: that for more then five years, he has been infraction-free; he was in his early twenties when he was first convicted, but has since matured; he is considered low risk for recidivism; and, because he is subject to deportation, he does not pose a danger to the community. (See Amend Motion at ECF p.17; see also Reply at ECF p.3.) The Government counters Defendant's "prior motions for relief on his sentence have been rejected in light of the very § 3553(a) factors this Court must consider in evaluating th[is] [M]otion." (Opp'n at 6.) As such, it argues the Court "should also deny this [M]otion on the same basis." (Id.) The Court agrees.

First, both Defendant's NDNY and EDNY Convictions were for serious crimes; that Defendant was subsequently granted parole on his NDNY Conviction does not diminish this fact. Second, notwithstanding Defendant's self-proclaimed new-found self-discipline, remaining compliant with prison rules and regulations is expected of all prisoners and does not demonstrate

extraordinary rehabilitation, which could weigh in favor of a sentence reduction.  Moreover, Defendant's EDNY Conviction occurred while Defendant was imprisoned, underscoring a heightened level of disrespect for the law.  Third, the Court is unpersuaded that Defendant's deportation would be penal in nature.  Rather, as the Government persuasively asserts, Defendant "will actually benefit from the deportation as [he] will not be subject to a term of supervised release."  (Opp'n at 5-6 (citing United States v. MacCallum, 511 F. Supp. 3d 419, 428 (W.D.N.Y. 2021).)

Having considered the applicable Section 3553(a) Factors, the Court concludes Defendant's Sentence must remain unchanged to, at a minimum, serve as a message that those who break the law while still owing a debt to society from prior criminal conduct will not be treated lightly.  See, e.g., United States v. Miller, No. 21-1538, 2023 WL 3807151, at *1 (2d Cir. June 5, 2023) (summary order) (stating district courts are accorded "the greatest deference" "as to how to weigh each of the § 3553(a) factors"); United States v. Baker, No. 20-3689-cr(L), 2022 WL 16557965, at *2 (2d Cir. Nov. 1, 2022) (summary order) (stating appellate court "will not second-guess the district court's decision to ascribe particular weight to some [§ 3553(a)] factors instead of others" (citing United States v. Verkhoglyad, 516 F.3d 122, 131 (2d Cir. 2008)).  Indeed, given Defendant's criminal history and the facts of the instant case, which arose while

Defendant was incarcerated for another, very serious crime, Defendant has demonstrated disrespect for the law.  Thus, even if Defendant had presented extraordinary and compelling circumstances warranting compassionate release, which he has not, the Section 3553(a) Factors would override those circumstances.  In sum, in its discretion, the Court finds the EDNY Sentence, which falls within the amended Guidelines range, continues to be appropriate to, inter alia: reflect the seriousness of Defendant's offense; promote respect for the law; provide just punishment; and, adequately deter criminal conduct, thereby satisfying the applicable Section 3553(a) Factors.


[Remainder of page intentionally left blank.]

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's:

I.   Appoint Motion (ECF No. 243) is **DENIED;**

II.  Amend Motion (ECF No. 235) is **GRANTED** to the extent the Amend
     Motion is deemed a supplement to Defendant's underlying
     Motion and has been considered by the Court in ruling upon
     said Motion; and

III. Defendant's Compassionate Release Motion (ECF No. 226) is
     **DENIED** in its entirety; and

     **IT IS FURTHER ORDERED** that the Clerk of Court mail a
copy of this Order to the Defendant at his current address of
record, including the notation "LEGAL MAIL" on the mailing
envelope.


                              **SO ORDERED.**

                               /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:  August 5, 2024
        Central Islip, New York